ALAN G. LANCE
Attorney General
State of Idaho

MICHAEL A. HENDERSON
Deputy Attorney General
Chief, Criminal Law Division

L. LaMONT ANDERSON
KENNETH M. ROBINS
T. PAUL KRUEGER II
Deputy Attorneys General
Criminal Law Division
Capital Litigation Unit
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-2400

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ORIGINAL

| | |
|---|---|
| SALVADOR MARTINEZ, | CASE NO. 97-CV-0169-S-EJL |
| Petitioner, | MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| JOE KLAUSER, Warden, Idaho State Correctional Institution, | |
| Respondent. | |

COMES NOW, Respondent, Joe Klauser (hereinafter "state"), by and through his attorney of record, Kenneth M. Robins, Deputy Attorney General, and does hereby submits the following facts, arguments and authorities in support of Respondent's Motion for Summary Judgment. The state submits that Martinez' claims for relief are barred from consideration on the merits because they are procedurally defaulted.

*MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, Page 1*

I.

Background

On June 12, 1990, Martinez was convicted of rape (Idaho Code § 18-6101), forcible sexual penetration by use of a foreign object (Idaho Code § 18-6608), and second degree kidnapping (Idaho Code § 18-4501, 18-4503). (Lodged R., Ex.1, pp.104-06.) Martinez was sentenced to an indeterminate life sentence with a twenty-year minimum term of incarceration for rape and an identical sentence with a minimum term of fifteen years for kidnapping. Id. The court ordered that the sentences be served concurrently. Id. Martinez' conviction and sentence were affirmed by the Idaho Court of Appeals in July of 1992. (Lodged R., Ex.6.)

In December 1992, Martinez was transferred to an institution in the State of California to serve his Idaho sentences under the interstate compact. In the spring of 1994, a friend of Martinez retained an Idaho attorney to represent him. (Lodged R., Ex.12, p.2.) On June 21, 1995, while Martinez was confined in California, the Idaho attorney filed a post-conviction application under Idaho Code § 19-4901 *et seq.* (Lodged R., Ex.8, pp.3-23.) The application claimed that Martinez received ineffective assistance from the court-appointed attorney who represented him in the underlying criminal case. Id. The state post-conviction court issued a notice of intent to dismiss the application on the ground that the application was time-barred under the one-year statute of limitation in Idaho Code § 19-4902. (Lodged R., Ex.8, pp.34-37.) In response to the notice, Martinez raised several challenges to the statute of limitation and argued that its running had been tolled due to Martinez' out-of-state incarceration. (Lodged R., Ex.8, pp.66-81.) The state post-conviction court rejected these arguments and dismissed the application. (Lodged R., Ex.8, pp.86-88.)

In his appeal to the Idaho appellate courts, Martinez raised the same challenges to the application of the one-year statute of limitation in Idaho Code § 19-4902. However, the briefing contains little discussion of the merits of Martinez' claims. Martinez' brief considered by the Idaho Court of Appeals mentions the substance of Mary Polizzo's testimony, but contains no discussion of this testimony in conjunction with Martinez' Sixth Amendment claims. (Lodged R., Ex.9, pp.18-19.) Martinez' brief in support of his petition for review to the Idaho Supreme Court contains no discussion of the merits of the substantive claims raised in Martinez' post-conviction application. (Lodged R., Ex.13 and 14.)

II.

Summary Judgment In Habeas Corpus Cases

The petition for a writ of habeas corpus is essentially a civil action in federal court. See, Fisher v. Baker, 203 U.S. 174, 181, 27 S.Ct. 135, 136, 51 L.Ed. 142 (1906). As such, it is subject to the Federal Rules of Civil Procedure where application of the rules would not be inconsistent with established habeas practice and procedure. Rule 11, Rules Governing Section 2254 Cases and Advisory Committee Note. It is well established that the motion for summary judgment as provided in Fed.R.Civ.P. 56 is applicable to habeas proceedings. See, Blackledge v. Allison, 431 U.S. 63, 80-81, 97 S.Ct. 1621, 1632-33, 52 L.Ed.2d 136 (1977). Moreover, consideration of a motion for summary judgment allows a district court to assess the need for an evidentiary hearing on the merits of a habeas petition. See, id. (discussing the role of the summary judgment motion in determining the need for plenary presentation of evidence in habeas proceedings at the federal level).

The summary judgment procedure permits the court to dispose of actions where there are no genuine issues of material fact. Under Fed.R.Civ.P. 56(c), the moving party has the burden of establishing that there are no genuine issues of material fact to the cause of action and of demonstrating entitlement to the judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The existence of contested facts will not defeat a summary judgment motion if the facts, which affect the outcome of the claim, are not in controversy. 477 U.S. at 248, 106 S.Ct. at 2510. The substantive law governing the disposition of the issue identifies what constitutes a material fact. As stated by the United States Supreme Court, "Only disputes over facts, which might affect the outcome of the suit under governing law, will properly preclude the entry of a summary judgment." Id. In addition to materiality, the summary judgment inquiry asks if a dispute is genuine. That is, "if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party." Id.

To contest a motion for summary judgment, the non-moving party must do more than merely refer to and rely on the allegations in his pleadings. Rather, he must "set forth specific facts showing that there is a genuine issue for trial." Id. While the non-moving party's burden is merely to demonstrate that there should be a hearing as to the merits of a claim, the non-moving party must do more than simply show that there is some metaphysical doubt as to a material fact of the claim. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The substantive law of federal habeas corpus defines those facts which are material to the issuance of the writ. Under 28 U.S.C. § 2241(c), a district court may grant a petition for federal habeas corpus relief where the petitioner alleges and proves facts showing that he is in custody in violation of the

Constitution, laws and treaties of the United States. Where a prisoner has been afforded a hearing in state court on the merits of his constitutional claims, however, the federal habeas statutes provide that the written findings of fact reached by the state court, whether trial or appellate, "shall be presumed to be correct." 28 U.S.C. § 2254(e). Thus, while those facts tending to demonstrate the unconstitutionality of state custody are material, due to the statutory presumption of correctness, a habeas petitioner faces a comparatively higher burden in establishing the genuineness (or hearing worthiness) of the contested facts. Sumner v. Mata, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981) (Sumner I) (stating that when the state and federal court review the same record, comity and federalism concerns mandate deference to state court factual findings).

III.

The Exhaustion And Procedural Default Doctrines

Before a federal court may consider the merits of a state prisoner's petition for a writ of habeas corpus, the court must be satisfied that each claim set forth in the petition is exhausted. 28 U.S.C. § 2254(b); Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "The exhaustion requirement may be satisfied in two ways: by showing either that no state remedies are available or that the state supreme court has been presented with a fair opportunity to rule on the merits of the claim." Harmon v. Ryan, 959 F.2d 1457, 1460 (9th Cir.1992).

Where no state remedies remain available, and the claim is deemed exhausted, the petitioner's failure to timely seek state court review constitutes a default under the state's procedural rules. Harmon, 959 F.2d at 1461. A habeas petitioner waives a constitutional claim by failing to raise the claim on appeal to

the state's highest court. Noltie v. Peterson, 9 F.3d 802, 804 (9th Cir.1993). If a petitioner could have raised a constitutional claim in state court but did not and is now barred from doing so by a state rule of procedure, the claim is procedurally defaulted. Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir.1988). In other words, if a claim has not been presented to the state court, the federal court may look to state law to determine whether the petitioner has defaulted under state procedural rules. Teague v. Lane, 489 U.S. 288, 299, 109 S.Ct. 1060, 1069, 103 L.Ed.2d 334 (1989). The procedural default doctrine also requires that a habeas petitioner present his claim at each level of appellate review (Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir.1992)), and he may not use a statutory deviating path to the state's highest court (Turner v. Campoy, 827 F.2d 526, 528 (9th Cir.1987)). The claim must be presented in a posture that is acceptable under the state's procedural rules. See, Sweet v. Cupp, 640 F.2d 233 (9th Cir.1981); Deters v. Collins, 985 F.2d 789, 789 (5th Cir.1993).

Enumeration of the claim's operative facts, without more, is inadequate to alert the state court to the federal nature of the claim. Johnson v. Zenon, 88 F.3d 828, 829-31 (9th Cir.1996). Similarly, the reliance in state court on a state law ground, or on a different theory of federal law than that relied upon in the federal habeas court, does not constitute a fair presentation of the petitioner's federal claim. Id. A claim will be adjudicated in a federal habeas proceeding only if the same claim has first been expressly presented to the state court. Id.

Under Idaho law, the limitation period for post-conviction actions is set forth in Idaho Code § 19-4902, which provides that an application "may be filed at any time within one (1) year from the expiration of the time for appeal or from the determination of an appeal or from the determination of proceedings following an appeal, whichever is later." At the time of Martinez' conviction, this statute provided a five-year limitation period, but a 1993 amendment shortened the

period from five years to one year. 1993 Idaho Sess. Laws, ch.265, § 1, p.898. When this amendment became effective on July 1, 1993, the statute of limitation was reduced to one year from the effective date of this amendment. See, Esquivel v. State, 128 Idaho 390, 391, 913 P.2d 1160, 1161 (1996); Chapman v. State, 128 Idaho 733, 734, 918 P.2d 602, 603 (Ct.App.1996). Because Martinez failed to file his application within this one-year period, the Idaho courts correctly concluded that Martinez' for post-conviction claims were time-barred.

As explained earlier, while Martinez was confined in California, the Idaho attorney filed a post-conviction application under Idaho Code § 19-4901 *et seq.* (Lodged R., Ex.8, pp.3-23.) The application claimed that Martinez received ineffective assistance from the court-appointed attorney who represented him in the underlying criminal case. Id. The state post-conviction court issued a notice of intent to dismiss the application on the ground that the application was time-barred under the one-year statute of limitation in Idaho Code § 19-4902. (Lodged R., Ex.8, pp.34-37.) In response to the notice, Martinez raised several challenges to the statute of limitation and argued that its running had been tolled due to Martinez' out-of-state incarceration. (Lodged R., Ex.8, pp.66-81.) The state post-conviction court rejected these arguments and dismissed the application. (Lodged R., Ex.8, pp.86-88.)

In his appeal to the Idaho appellate courts, Martinez confined his appellate arguments to the application of the one-year statute of limitation in Idaho Code § 19-4902. Martinez' brief that was considered by the Idaho Court of Appeals mentions the substance of Mary Polizzo's testimony, but contains no discussion of this testimony in conjunction with Martinez' Sixth Amendment claims. (Lodged R., Ex.9, pp.18-19.) Martinez' brief in support of his petition for review to the Idaho Supreme Court contains no discussion of the merits of the substantive claims raised in his post-conviction application. (Lodged R., Ex.13 and 14.)

*MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, Page 7*

Accordingly, Martinez' claims are procedurally defaulted in two respects. First, all claims in the petition are procedurally defaulted because Martinez failed to raise the claims stated in this petition before the state's highest court. Noltie v. Peterson, 9 F.3d 802, 804 (9th Cir.1993). Second, Martinez failed to present his claims in a manner consistent with the state's procedural rules when he filed his post-conviction application more than one year after obtaining Idaho counsel.

IV.

Idaho Code § 19-4902 Is An Adequate Bar To The Claims Asserted In Martinez' Federal Habeas Petition

In his brief in support of his petition for habeas corpus, Martinez' counsel acknowledges the existence of Idaho Code § 19-4902 as a procedural bar, but argues that this code section was not firmly established, and is not an independent and adequate state law ground that bars federal review of Martinez' claims. (Docket, #8.) The state submits that Idaho Code § 19-4902 is an adequate and independent state law ground that bars federal review of Martinez' defaulted claims.

A rule establishing a procedural bar must be "firmly established and regularly followed." James v. Kentucky, 466 U.S. 341, 348, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984). The procedural bar must be "consistently and regularly applied," or "under federal law it is not an independent and adequate ground for affirming petitioner's conviction." Johnson v. Mississippi, 486 U.S. 578, 588-89, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988). In determining whether a procedural bar default is adequate, the federal courts limit their search for a uniformly applied default to the same type of claim and only ask whether the actual application of the procedural bar to similar claims has been even-handed "in the vast majority of cases." Moran v. McDaniel, 80 F.3d 1261, 1270 (9th

*MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, Page 8*

Cir.1996). A procedural bar is adequate if it is "firmly established and regularly followed" by the time as of which to be applied. Ford v. Georgia, 498 U.S. 422, 424, 111 S.Ct. 850, 857-858, 112 L.Ed.2d 935 (1991). The application of a procedural bar is a matter of state law; it is not the role of the federal court to decide whether the state court properly applied its procedural bar to the facts of the petitioner's case. Wood v. Hall, 130 F.3d 373, 378-79 (9th Cir.1997).

The burden of establishing that a state procedural bar is not consistently applied or well-established at the time of the petitioner's purported default is placed upon the petitioner. As explained in Wood, it was the petitioner who "has not demonstrated that Oregon has treated similarly situated litigants differently nor has he shown that Oregon applies its rule so infrequently that he was legitimately confused . . . ." Id., at 378. In Duggers v. Adams, 489 U.S. 401, 410, n.6, 109 S.Ct. 1211, 1217, n.6 (1989), the Supreme Court noted that the few cases cited by the habeas petitioner did not convince the court that Florida fails to regularly and consistently apply its procedural bar. The Fifth Circuit has expressly stated that the petitioner bears the burden of showing the procedural bar is not regularly or consistently applied. Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997), *cert. denied*, ___ U.S. ___, 118 S.Ct. 1091 (1998).

Martinez has argued that the one-year statute of limitation articulated in Idaho Code § 19-4902 was not firmly established at the time of his procedural default. (Docket #8, pp.1-8.) He specifically complains that the two cases cited in the Idaho Court of Appeals' opinion, Esquivel v. State, 128 Idaho 390, 391, 913 P.2d 1160, 1161 (1996), and Chapman v. State, 128 Idaho 733, 734, 918 P.2d 602, 603 (Ct.App.1996), were not decided until after Martinez filed his application for post-conviction relief. However, Martinez ignores a significant body of case law applying statutes of limitation under similar circumstances. *See,* University of Utah Hospital v. Pence, 104 Idaho 172, 174, 657 P.2d 469,

*MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, Page 9*

471 (1982) (court upheld a statute of limitation for medical indigency benefits that became effective subsequent to the admission and release of the patient from the hospital); Mellinger v. State, 113 Idaho 31, 34-35, 740 P.2d 73, 76-77 (Ct.App.1987) (court of appeals upheld a five-year period of limitation contained in a previous version of Idaho Code § 19-4902 applied to a conviction entered before the effective date of the amendment); LaFon v. State, 119 Idaho 387, 390, 807 P.2d 66, 69 (Ct.App.1991) ("Legislative reduction of a statutory period of limitation may apply to an accrued cause of action as long as a reasonable time is allowed within which to assert the cause."). While these cases did not involve a one-year statute of limitation, the adequacy of a procedural bar is not dependent upon a "case law citation that speaks to the very same factual scenario as the one before it prior to invoking the rule of procedural default. Instead we follow the Supreme Court's dictate that where a rule is sufficiently clear as to put the petitioner on notice that he must raise all claims at risk or default, that petitioner must raise all claims." Bargas v. Burns, __ F.3d __, __, 1999 F.3d 382711, pp.3-4 (9th Cir.1999).

As explained earlier, the one-year statute of limitation for post-conviction actions was enacted in 1993. There is nothing ambiguous about the statute's requirement that Martinez assert his claims "within one (1) year from the expiration of the time for appeal or from the determination of an appeal or from the determination of proceedings following an appeal, whichever is later." Idaho Code § 19-4902. Despite the fact the court tolled the statute during his period of out-of-state confinement, Martinez failed to file his application within one year of gaining access to the Idaho court through his attorney. (Lodged R., Ex.8, pp.48-60.) Such unambiguous procedural rules derived from state statutes are necessarily "firmly established." O'Dell v. Netherland, 95 F.3d 1214, 1241 (4th

Cir.1996) (en banc), *aff'd*, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997).

Both the case law and the statutory language demonstrate that the governing legal principles behind the Idaho courts' application of section 19-4902 were well established by the time Martinez' post-conviction claims accrued. Because the Idaho courts' application of these statutes of limitation was well established and applied even-handedly in the vast majority of cases, Martinez' claims are barred from federal review.

Citing Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); and Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), Martinez contends the one-year statute of limitation is not an independent state ground because it is interwoven with federal law. In Ake, the defendant had failed to raise the claim that he was entitled to assistance of a psychiatrist in his motion for a new trial. However, existing Oklahoma law required the state appellate court to examine the record for "fundamental error"—including all constitutional errors—notwithstanding the defendant's failure to properly raise them. According to the Ake Court, this rendered the subsequent application of the state's procedural bar "depend[ent] upon an antecedent ruling of federal law." As a result, the state procedural bar was not independent of federal law and federal law was not precluded. Ake, 470 U.S. at 75, 105 S.Ct. at 1092.

The court's application of Idaho Code 19-4902 does not contain the type of entanglements identified in Ake. The Idaho appellate courts were not obligated to conduct a mandatory review of the constitutionality of the statute of limitation governing post-conviction actions. The Idaho Court of Appeals did so only because Martinez raised these arguments on appeal from the dismissal of the petition. Nothing in the Idaho Court of Appeals' opinion suggests such an

intermingling of federal law in its standard of review. Moreover, Ake is a direct review case and the United States Supreme Court has declined to apply the Ake rule regarding independent state grounds in federal habeas corpus proceedings. Coleman, 501 U.S. at 741, 111 S.Ct. at 2560. Because the Idaho Court of Appeals was addressing constitutional challenges actually raised by Martinez during appellate proceedings, his argument that Idaho Code § 19-4902 is not independent of federal law must fail.

## V.
### Cause and Prejudice

To escape the consequences of his procedural default, Martinez has the burden of showing both cause and prejudice. Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977); Murray v. Carrier, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986). In McCleskey v. Zant, 499 U.S. 466, 493-94, 111 S.Ct. 1454, 1170 (1991), the Supreme Court specifically discussed the "cause" standard:

> [T]he cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. [Citation omitted]. Objective factors that constitute cause include "interference by officials" that makes compliance with the State's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." [Citation omitted].

The focus of the cause standard is the petitioner's conduct, who "has an obligation 'to conduct a reasonable and diligent investigation aimed at including all relevant . . . grounds for relief in the first federal habeas petition.'" Williams v. Calderon, 83 F.3d 281, 286 (9th Cir. 1996), cert. denied, 517 U.S. 1183, 116 S.Ct. 1588 (1996), quoting McCleskey, 499 U.S. at 493, 111 S.Ct. at 1170.

Discussing the cause standard in McCleskey, the Supreme Court explained it is not enough that a petitioner "did not possess, or could not reasonably have obtained, certain evidence . . . if other known or discoverable evidence could have supported the claim in any event. '[C]ause . . . requires a showing of some external impediment *preventing* counsel from constructing or raising the claim.'" McCleskey, 499 U.S. at 497, 111 S.Ct. at 1472, *quoting* Murray v. Carrier, 477 U.S. 478, 492, 106 S.Ct. 2639, 2648 (1986) (emphasis in original).

The cause standard has also been discussed in Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546 (1991), as being something external to the petitioner:

> [W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.

Id., 501 U.S. at 753 111 S.Ct. at 2566, *quoting* Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645 (1986). Attorney ignorance or inadvertence is not "cause." As explained in Coleman, "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, . . . the petitioner must 'bear the risk of attorney error.'" Id., 501 U.S. at 753, 111 S.Ct. at 2566-67.

Attorney error that amounts to ineffective assistance of counsel may constitute cause. Coleman, 501 U.S. at 754, 111 S.Ct. at 2567. However, in Murray, 477 U.S. at 488-89, 106 S.Ct. at 2645-46, the Court held that before a petitioner may use ineffective assistance of counsel as a basis to establish cause, he is first required to present the ineffective assistance of counsel issue to the state courts as an independent claim. However, a petitioner cannot claim constitutionally ineffective assistance of counsel unless there is a constitutional

right to counsel. Coleman, 501 U.S. at 752-57, 111 S.Ct. at 2566-68. This extends only to trial and the right of first appeal, not collateral attack such as a state petition for post-conviction relief or a federal habeas petition. Id.

Throughout his pleadings, Martinez has suggested that his out of state incarceration is cause for his failure to comply with the statutory time requirements governing post-conviction actions. (Lodged R., Ex.8, pp.82-84.) He claims that he did not have access to Idaho legal materials and could not have known of the legislative enactment of the one-year limitation. Id. However, the Ninth Circuit has held that alleged inadequacies in the prison library or legal assistance procedures are not cause. Thomas v. Lewis, 945 F.2d 1119, 1122 (9th Cir.1991).

Martinez has also suggested that the delay in obtaining transcripts is cause for his default. (Lodged R., Ex.8, p.73.) Other circuits have recognized that the absence of transcripts is not cause because the petitioner was present during the underlying criminal proceedings and should know what happened. See, Montgomery v. Meloy, 90 F.3d 1200, 1203-04 (7th Cir.1996); see also, Bannister v. Delo, 100 F.3d 610, 625 (8th Cir.1996) (petitioner's knowledge of the underlying proceedings is a source of information reasonably available for procedural default purposes).

Martinez has failed to establish cause or prejudice, both of which must be established before his procedural defaults will be overcome and the merits of his claims heard.

VI.

MISCARRIAGE OF JUSTICE

Martinez also attempts to escape the legal consequences of his procedural default by claiming that it would be a miscarriage of justice to

*MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, Page 14*

preclude consideration of the claim. See, Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). To obtain relief, Martinez has the burden of showing that the constitutional error complained of resulted in the conviction of an actually innocent person. Harris v. Vasquez, 949 F.2d 1497, 1514 (9th Cir.1990). Martinez has failed to make such a showing.

The federal courts have distinguished "actual innocence" from "legal innocence" which results from a legal error in the proceedings. Sawyer v. Whitley, 505 U.S. 333, 339, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992). A petitioner asserting his actual innocence of the underlying criminal offense must show "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence" presented in his petition. Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995); Coley v. Gonzales, 55 F.3d 1385, 1387 (9th Cir.1995). The Court also makes a distinction between what a reasonable juror "could do" and "would do" under Schlup and Carrier. 513 U.S. at 330, 115 S.Ct. at 868; compare, Jackson v. Virginia, 443 U.S. 309, 99 S.Ct. 278, 61 L.Ed.2d 560 (1979).

Martinez has not met the miscarriage of justice standard. The state presented the testimony of the victim as well as another witness who was involved in some of the sex acts for which Martinez was ultimately convicted. (Lodged R., Ex.2, pp.70-130; Ex.3, pp.242-71.) This woman testified that she also felt forced and intimidated by Martinez. (Lodged R., Ex.3, pp.250-54.) During the defense case in chief, the jury also heard the testimony of Chris Jones, one of the people who transported the victim to the second residence. (Lodged R., Ex.3, pp.271-85.) Despite his testimony that the victim had not been kidnapped and was not being raped, he admitted that the victim had expressed fear of Martinez and that he had "pretended" to have the victim fellate him because Martinez had ordered her to do so. Id., at 281-85. Any testimony

offered by Mary Polizzo would simply be seen as an attempt to bolster Jones' incredible account of the victim's asportation or confinement that evening.

Martinez has presented little evidence to undermine the evidence produced at his trial. Polizzo is unable to truthfully state that she was with Martinez and the victim during the entire relevant time period. (Lodged R., Ex.2, p.101, Ls.3-11.) The fact that Polizzo would give an account differing from the victim's testimony is hardly surprising. The victim testified that Polizzo expressed contempt and threatened her when the victim asked for her help during her encounter with Martinez. (Lodged R., Ex.2, pp.99-101.) Under these facts, Martinez is hard-pressed to show that Polizzo's testimony meets the "more likely than not" showing necessary to vacate his conviction and sentence.

The timing of Polizzo's revelations is also suspect. The evidence of innocence must be reliable evidence not presented at trial. Schlup, 513 U.S. at 324, 155 S.Ct. at 865. The court may consider the timing of the submission and the likely credibility of Polizzo in its determination of the reliability of the evidence of innocence. 513 U.S. at 332, 115 S.Ct. at 869; *see also*, Washington v. Delo, 51 F.3d 756, 761 (8th Cir.1995). The timing of Polizzo's revelations militate against a miscarriage of justice finding in this case sufficient to overcome Martinez' procedural defaults.

## CONCLUSION

Respondent respectfully requests that this court grant Respondent's Motion for Summary Judgment case and that all the claims stated in Martinez' petition for habeas corpus be denied on procedural default grounds.

DATED this 15th day of July, 1999.

_____
KENNETH M. ROBINS
Deputy Attorney General
State of Idaho

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or about the 15th day of July, 1999, I served a true and correct copy of the foregoing document, by causing a copy thereof to be placed in the United States Mail, postage prepaid, addressed to:

Andrew Parnes
Attorney at Law
P.O. Box 5988
Ketchum, ID 83340

_____
Kenneth M. Robins
Deputy Attorney General
State of Idaho